M. S. BRYAN, *as Administrator, etc., Appellant,* v.
E. PALMER *et al., Appellees.*

No. 16,543.

SYLLABUS BY THE COURT.

EVIDENCE—*Transactions Had with Persons Since Deceased.* In
an action by an administrator to recover money loaned to the
defendant by the decedent in his lifetime the defendant tes-
tified that money for the payment of the debt was inclosed
in an envelope and taken to the post office and that certain
steps were there taken to have the postmaster register the
letter and send it to the decedent in a distant state, and also
that in due time he received a writing acknowledging the
receipt of the money, and this was identified and introduced
in evidence. *Held,* that the admission of the testimony did
not violate the limitation prescribed in section 320 of the code
of 1909, which prohibits a party in a case like this from testi-
fying to a communication or transaction had personally with
the decedent.

Appeal from Marion district court. Opinion filed
November 5, 1910. Affirmed.

*H. S. Martin,* and *W. H. Carpenter,* for the appellant.
*L. F. Keller,* and *J. S. Dean,* for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: M. S. Bryan, who was the admin-
istrator of the estate of Jasper King, deceased, brought
this action to recover on a promissory note for $500,
executed by N. A. Palmer, as principal, and E. Palmer,
as surety. The defense of the Palmers was that the
note had been paid during the lifetime of King. On
the trial it was shown that N. A. Palmer had moved
to New Mexico, and that he had there undertaken to
transmit money to Kansas for the payment of the note.
There was testimony that he had inclosed currency
amounting to $515 in an envelope, and with it was in-
closed a form of a receipt for King to sign. Palmer
undertook to have the letter registered, but for some
reason the postmaster omitted the registration. There

was proof that a letter of this kind was received by King in Kansas, and that he signed the receipt acknowledging payment of the note. A receipt signed by King and received by Palmer was introduced in evidence. The jury, upon what appears to be sufficient testimony, found that payment had been made. The principal question on this appeal is upon the admission of Palmer's testimony in regard to inclosing the bills in the envelope, the taking of it to the postmaster, and his attempt, as well as failure, to have it registered, and also the receipt of King acknowledging payment. It is contended that the testimony falls within the provisions of section 320 of the code of 1909 forbidding a party from testifying in his own behalf against an administrator in respect to any transaction or communication had personally with the decedent. This objection was not made when the testimony was introduced, but after it had been received a motion was made to strike it out because it violated the limitation mentioned.

The steps taken by Palmer at the post office in New Mexico, when he was hundreds of miles from King, in placing bills in the envelope, the statements made by him at the post office and his attempt to register the letter were not personal transactions or communications with King within the meaning of the code provision. King was not an immediate party to any of the transactions respecting which testimony was given. He had no personal knowledge of what was said or done by Palmer at the post office in New Mexico, and if he were living could have given no testimony in contradiction of them. The code prohibits only such communications and transactions as are personal— those of which both parties have knowledge. As to these the law places the parties on a level, and in effect says that since the deceased person can not testify to those conversations and transactions the lips of the living party will be sealed as to them. The theory of the prohibition is that it would not be safe to allow a

party to testify to personal conversations or dealings with another when that other has since died, and where, as in many cases, there are no other witnesses to them nor any means of disputing or contradicting them if untrue. Things said or done by Palmer to which objection was made were not in the presence of King, and were not strictly personal. King, if living, could not from personal knowledge have denied or contradicted them. The court is not inclined to extend limitations of this character by interpretation. Palmer was a competent witness in the case as to all material facts, except as to personal conversations or dealings with the deceased. Where these have been directly and personally participated in by both parties the testimony is, under the statute, excluded, but as to all other material facts the surviving party is a competent witness. (*Clifton v. Meuser,* 79 Kan. 655; *Heery v. Reed,* 80 Kan. 380.)

Under a similar statute the supreme court of Wisconsin held that testimony by the survivor as to the receipt of a letter written by the other party before his death was admissible. In the opinion it was said:

"The deceased party could not, from the nature of the transaction, have made any directly contradictory statement. He was a party to the transaction, but not an immediate party, at least to that part of it concerning which the proof is offered. The fact to be proved is not one of which he had any positive knowledge, or which he could, if living, have positively denied. He could deny it indirectly or by inference only, by denying that he ever wrote the letter. But this would be testimony to another fact or point, as to which it is not proposed to examine the living party, and of which he had no positive knowledge." (*Daniels, executor, v. Foster and others,* 26 Wis. 686, 691.)

In *Dysart v. Furrow,* 90 Iowa, 59, the supreme court of Iowa had before it the meaning and purpose of a provision similar to our own, and said:

"When by death, insanity or lunacy the lips of one party are closed, section 3639 wisely closes the mouth

of his adversary as to personal transactions and communications which the silent party might from personal knowledge deny, were he able to speak. Personal transactions and communications, as contemplated in the statute, are transactions and communications between the parties, of which both must have had personal knowledge." (p. 61.)

(See, also, *Sykes v. Bates*, 26 Iowa, 521; *Sankey v. Cook*, 82 Iowa, 125; *Stewart and others v. Stewart and another*, 41 Wis. 624; *Williston v. Williston*, 41 Barb. [N. Y.] 635.)

Some of the testimony relating to the preparations made for transmitting the money and also to obtaining possession of the receipt closely approached the border line of incompetency, but, considering the spirit and intent of the statute, substantially all of the testimony objected to was admissible. The witness, it is true, spoke of sending a letter to, and receiving one from, King, and also stated that the letter received had been destroyed, but there was no attempt to show the contents of the letters. It may be said, too, that most of the challenged testimony was well supported by other testimony.

Complaint is made that in the testimony as to the sending of the money and the attempt to register the letter remarks of a hearsay character were made to and by the postmaster. These remarks were mainly explanatory of accompanying acts, and in none of them do we find anything prejudicially erroneous.

The judgment is affirmed.