No. 18,557.

R. F. CHAMBERS et al., *Appellants*, v. THE LAND CREDIT TRUST COMPANY et al., *Appellees*.

SYLLABUS BY THE COURT.

1. ACTION BY BONDHOLDERS—*Against Trust Company and Its Directors—Negligence and Mismanagement of Trust—Charges Not Proven.* An action was brought by bondholders of a mortgage company against a trust company which had received collateral mortgages on deposit and certified the bonds secured thereby. The petition alleged negligence and mismanagement of the trust, whereby the withdrawal of valid mortgages and the substitution of worthless ones had been permitted. The directors of the trust company were joined as defendants, against whom the same charges of negligence were made. Discovery and application of assets and an accounting of the trust mortgages were sought, together with a personal judgment against the trust company and the directors. A judgment was rendered that the defendants should account for $100,000, which should be applied *pro rata* in payment of the bonds amounting to more than double that sum,

which bonds should thereupon be canceled. The judgment recited the consent of the bondholders to this disposition, and the payment of $50,000 of the amount into court by the individual directors who were thereupon allowed to appropriate assets of the trust company for reimbursement. The remaining $50,000 was paid by the mortgage company and the trust company. Afterwards this action was brought by stockholders of the trust company against the individual directors, alleging mismanagement and negligence substantially as in the former suit, and the wrongful appropriation of the assets of the trust company to the payment of the judgment rendered against them. The prayer was for an injunction; for an accounting and restoration of the assets so appropriated, and for personal judgment. The plaintiffs pleaded the former judgment against the directors as an adjudication of their negligence. Parol evidence was admitted tending to prove that the former judgment was rendered upon a compromise without any determination of the charge of negligence, and the court found that the directors were held liable in the first action because they held assets of the trust company after it had ceased to do business. It is held that the former adjudication is not conclusive of the directors' negligence.

2. SAME. Upon an examination of the evidence a finding of the district court that it did not prove the negligence alleged is sustained.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed April 11, 1914. Affirmed.

*W. P. Campbell,* of Wichita, and *M. C. Freerks,* of Jamestown, N. Dak., for the appellants.

*H. C. Sluss,* and *O. A. Keach,* both of Wichita, for the appellees.

The opinion of the court was delivered by

BENSON, J.: This action was prosecuted by stockholders of the Land Credit Trust Company to charge the directors of that company for losses caused by their alleged negligence in managing its affairs.

The material facts, briefly stated, are that the Winne Mortgage Company, a New Jersey corporation, was do-

ing business at Wichita. Its three principal officers, with two others, organized the Land Credit Trust Company, a Kansas corporation, who constituted its board of directors for the first year. Scott E. Winne was president of the mortgage company, and the vice president, and active in the control of the trust company. On October 8, 1906, the trust company entered into a contract with the mortgage company to receive, hold and certify mortgages upon real estate as security for the bonds of that company. The trust company endorsed upon each bond its certificate that it was one of the bonds described in the deed of trust. The deed or trust agreement provided that certificates should not be endorsed upon any bond for which securities of a face value equal at least to the amount of the bond were not held. It also provided for the surrender of mortgages as bonds were paid and canceled; for the withdrawal of mortgages and the substitution of others; for the sale of securities upon request of a majority of the bondholders when default should be made upon the bonds; and for the application of the proceeds *pro rata* among the bondholders. Another provision of the agreement was that:

"The trustee shall not in any event be held to guarantee the value of any note or security pledged under this agreement or the value or title of any lands mortgaged to secure said notes or securities or the value of title of any land conveyed to said trustee under the provisions of this deed."

Bonds were issued by the mortgage company and certified by the trust company from October 1, 1906, to and including November 1, 1907, amounting to $230,000.

The mortgage company became insolvent early in the year 1908. The bondholders called on the trust company to apply the securities in its custody, but that company resigned its trust and placed the securities in a bank, resolved to go into liquidation, and turned its own assets over to one of its directors, appointed as

manager.    Afterwards an individual trustee was appointed to hold the securities so placed in the bank. On April 3, 1908, an action, hereinafter called the Brandt suit, was commenced in the district court at Wichita, by Peter Brandt and other bondholders, against the mortgage company, the trust company, and the individual directors of the trust company, who are defendants in this action.    Afterwards other bondholders came in by an intervening petition.   In these petitions negligence in the management of the trust was charged upon the trust company and its directors in receiving securities from the mortgage company to which it had no title, or upon which no money had been advanced, or which were otherwise worthless; and in allowing the withdrawal of valid mortgages and the substitution of others that were worthless.    It was charged that the trust company and its directors negligently allowed Mr. Winne, president of the mortgage company, free access to the securities, and in fact permitted the mortgage company freely to act in all these matters for the trust company, to its loss.   An injunction was asked to prevent the disposition of assets, and that the trust company and its individual directors account for and restore to the trust an amount equal to the securities that had been certified, for the restoration of any remaining valid securities, and for a personal judgment against the mortgage company, the trust company, and the defendant directors, for the amount of the outstanding bonds, to be a first lien upon the assets of the trust company.

Issues were made up and tried in the Brandt suit and a judgment rendered on the second day of August, 1909, in which it was found that the total amount of outstanding bonds of the mortgage company certified by the trust company was $225,200, to secure which mortgages had been deposited with the trust company under the trust agreement, and that the trust company

had permitted securities so deposited to be withdrawn and other apparent securities deposited which were not the securities contemplated or provided in the trust agreement, and that the securities remaining in the hands of the successor in trust were of little value. The court also found as follows:

"That the defendant Trust Company primarily and the defendant C. Oldfather . . . [and other individual directors named] as directors of the said Trust Company secondarily, are jointly and severally liable to account to the said trust for the benefit of the plaintiffs and defendants bondholders hereinafter described in the proportion of the amount of the several bonds by each of them held in the amount of one hundred thousand ($100,000.00) dollars.

"That upon the making of such an accounting and settlement thereof the said defendants so liable are entitled to have returned to the said Trust Company the said securities so in the possession of the defendant F. D. Ferguson, trustee for bondholders, successor in trust to the defendant, The Land Credit Trust Company."

Judgment was rendered for the bondholders against the mortgage company for $225,200, and:

"That the defendants, The Land Credit Trust Company primarily, and the defendants, C. Oldfather, [and other directors named] secondarily as directors of the defendants Trust Company, account and pay to the clerk of this court the sum of one hundred thousand ($100,000.00) dollars for the benefit of the holders of the bonds issued by The Winne Mortgage Company under the trust agreement described in the pleadings, in the said amounts hereinafter named; that the said sum of one hundred thousand ($100,000.00) dollars be so paid to the clerk of this said court on or before the 2d day of August, 1909, and bear interest from that date until paid at the rate of six per cent per annum. . . .

"That on such payment of said one hundred thousand ($100,000.00) dollars and costs by said Trust Company or by C. Oldfather . . . [and other directors named] or any or either of them, the person or persons so paying shall be subrogated to all rights of the said bondholders against The Winne Mortgage

Chambers v. Trust Co.

Company to and under, and for the enforcement and collection of, the judgment herein rendered in favor of said bondholders against said Winne Mortgage Company, and have, as far as said bondholders are concerned, a first lien upon all of the assets of said company in said amount, and that on such payment being made, said Trust Company and C. Oldfather . . . [and other directors named] are to be released and discharged from all liability and damages in law, equity, or in tort, or otherwise, to all said bondholders of The Winne Mortgage Company whether they have appeared heretofore in this cause or not, and to parties to this suit other than the said Trust Company. . . . .

"That the defendant, F. D. Ferguson, trustee, successor in trust to The Land Credit Trust Company be, and he is hereby required upon payment being made of the said one hundred thousand ($100,000.00) dollars and the costs above provided, to surrender and deliver to the defendants making such payment all mortgages, notes and bonds or other evidences of debt or other securities held by him as trustee, successor in trust to the Land Credit Trust Company."

The judgment recites that the trust company and the directors had paid in the sum of $100,000 and costs, and that the individual directors had paid in $50,000 of the $100,000 on account of the liability of the trust company, whereupon it was further adjudged that these individual directors should recover that amount from the trust company, and they were authorized to collect and convert to their use ratably from the effects of that company the amount so paid in by them.

Distribution of the $100,000 was ordered among the bondholders *pro rata,* on surrender of their bonds.

The stockholders of the trust company, who are plaintiffs in this action, were not made parties to that suit, but the evidence tends to show that several of them consented to a compromise, and some of them consented to the appropriation of the assets complained of in this action, and released the trust company and the directors from any claim they might have therefor.

The judgment for $100,000 and costs was paid by money derived as follows: From the mortgage company, $29,604.21; from the trust company, $22,385.49; and from a loan made upon the note of the trust company, endorsed by the directors, $49,350. In paying this note, $43,350 of the assets of the trust company were used, which with the $22,385.49 from the same source makes a total of $65,735.49. It is difficult to harmonize the amounts stated in the briefs with those shown by the testimony, but the differences are not material. About $66,000, it seems, of the assets of the trust company were so appropriated, and this is the amount the plaintiffs seek to have restored for distribution to stockholders.

The plaintiffs' contention is that the defendants are estopped by the judgment in the Brandt suit from denying their liability in this action to restore the amount taken from the assets of the trust company. This contention is based upon the proposition that their own negligence caused the loss for which they and their company were adjudged to account. It is argued that this negligence is conclusively proved by the judgment; that the general finding against them is equivalent to an express finding of negligence as alleged in the petition, and that they could not have been held individually liable, either primarily or secondarily, upon any other hypothesis. It is further contended that the judgment so far as it authorized reimbursement from the assets of the company, whose affairs they had mismanaged, is void, not being responsive to any issue, and that in any event it is not binding upon the stockholders, who were not parties to the suit nor represented otherwise than by the same directors for whose benefit this appropriation of the assets was made.

The defendants' contention is that the judgment in the Brandt case contains no adjudication of negligence against them. Their interpretation of that judgment is that it provided for a sequestration of the assets of

the trust company as the primary debtor to discharge the amount to be paid to the bondholders; the ascertainment of the right of the directors to recover from the trust company whatever they as individuals might pay, finding that they paid $50,000, and declaring their right to the assets of that company for reimbursement. The plaintiffs contend that the sole ground of liability of the directors in the former suit was their negligence, while the defendants say that their liability rested upon the control of assets of the trust company, for which they were held to account.

Passing by the question whether the stockholders should be deemed privies to the trust company or the directors, to the extent that the judgment in the Brandt suit may be pleaded in estoppel, the principal question to be determined is whether that judgment is a conclusive determination that the directors were negligent in managing the trust. The petition in that case alleged such negligence, and it is allowable to reason back from a judgment to the basis on which it stands wherein the conclusion is undisputable and could only have been drawn from certain processes. (*Bleakley v. Barclay,* 75 Kan. 462, 471, 89 Pac. 906; *Burlen v. Shannon,* 99 Mass. 200.) This rule, however, does not preclude the court in which a former adjudication is pleaded from ascertaining what had really been decided by parol evidence if it does not contradict the record. (1 Herman, Estoppel and Res Judicata, § 111; 1 Freeman on Judgments, 4th ed., § 273.) It is the contest actually made and passed upon which gives the successful party the right to use the judgment as a bar to the same contest in a new action on a different subject matter. (*Stroup v. Pepper,* 69 Kan. 241, 76 Pac. 825; Van Fleet's Collateral Attack, § 17.)

"Numerous cases, particularly among the earlier decisions, have held that a judgment is conclusive as to all questions within the issues raised in the case, whether or not they were formally contested or argued or specifically included in the decision. But the later

decisions generally hold that no question or contention is finally settled by a judgment, although it may have been fairly within the issues, as raised by the pleadings, if it was not actually litigated, that is supported or attacked by evidence, made the subject of the trial, submitted to the jury, or pressed upon the consideration of the court." (23 Cyc. 1311.)

"In the absence of proof that a particular issue actually was tried and determined in arriving at a former judgment, it is conclusive by way of estoppel only as to those facts without the existence and proof or admission of which it could not have been rendered." (23 Cyc. 1308.)

In case of uncertainty whether the particular question in controversy was decided in the former action it is still at large and open to further contention.

The petition in the Brandt suit not only charged negligence in receiving spurious and worthless securities in place of valid ones, but also alleged that the trust company had taken securities so held in trust and placed them to its own credit. While a judgment was asked against the trust company and the directors, an accounting was first sought to determine what disposition had been made of the trust mortgages, in order to determine the extent of the liability. The action was to discover and apply assets, and to account for their disposition. In the trial of this action the district court found that judgment was rendered against the directors in the Brandt case "by reason of the fact that after the Land Credit Trust Company ceased to do business on the 28th day of March, 1908, the directors of the Land Credit Trust Company held the assets of said trust company in trust for whoever was entitled to them." The judgment contains a recital that the bondholders consent to all its provisions, and their bonds were by its provisions scaled down more than one-half. These facts indicate that it was rendered upon a compromise, and parol evidence tending to prove that it was in fact so rendered was received.

This evidence is not in conflict, but is in harmony with the record. From this evidence it appears that the bondholders proposed to accept $100,000 in discharge of their claims; the trust company and its directors accepted the proposition, and paid the amount as directed. The judgment does not necessarily involve an admission, as in the case of default, that the petition was true, or that the defendants had been negligent, as charged, and the parol evidence shows that it rested upon a different basis. While conclusive of the liability and the amount of the liability, the judgment does not preclude inquiry concerning the ground upon which it was determined. (*Routh v. Finney Co.*, 84 Kan. 25, 113 Pac. 397.) It is therefore held that the record of the judgment in the Brandt case is not conclusive of the defendants' negligence.

While the plaintiffs' principal reliance is upon the Brandt judgment, they also contend that they should recover on proof of negligence independent of that judgment, and that a finding for the defendants on that issue is not supported by the evidence. That finding is:

"No evidence was introduced or offered in this action which proved any actionable negligence, or mismanagement by said defendants herein, or which proved such facts of any kind, as would render the said defendants, or any of them, liable to the said plaintiffs, or to the Land Credit Trust Company, upon any of the causes of action, or issues in this case."

The plaintiffs sought to prove negligence of the directors by introducing the by-laws of the trust company which provided for quarterly meetings and for audits. The minutes of the directors' meetings were presented in evidence, showing regular meetings on October 8, 1906 (organization), January 8, April 8, November 9, and December 15, 1907; and January 7, and March 24, 1908. Special meetings were also held, but no minutes were found of any meeting between April and October,

1907. Meetings were held after the company ceased to do business, relating mainly to the liquidation of its affairs and the settlement of the Brandt suit. The minutes of the meeting of April 8, 1907, show an examination of the books, records, funds and securities and that everything was found in condition as represented by the books. The minutes of the meeting in October of the same year contain the following:

"An examination was then made of the books and securities of the company, the cash counted and found to be correct."

The minutes of a meeting held December 15, 1908, recite:

"Committee appointed to count the cash and verify the accounts reported that it was correct.

"Moved and seconded that we accept the report of the committee. Motion carried.

"Motion made and seconded that a committe of three be appointed to count the cash and verify the accounts for the coming year. Motion carried.

"The president thereupon appointed the following persons on said committee:

"W. S. Roll, C. S. Harrington, and Thornton W. Sargent."

The following entry appears in the minutes of a meeting held March 24, 1908:

"The minutes of the meeting of January 7th, 1908 were read and approved.

"Thereupon the directors investigated the amount of bonds issued by the Winnie Mortgage Company, for which the Land Credit Trust Company held securities as trustee, and found that there were outstanding two hundred and thirty-five thousand dollars of such bonds, and that the securities pledged therefor in the form of mortgages held by the Land Credit Trust Company as trustee, amount to two hundred and thirty-five thousand six hundred and five dollars."

The minutes are silent concerning the appointment of an expert accountant, as authorized by the by-law referred to.

It is argued that the absence of any record of a meeting in April, 1908, and of any mention of the appointment or services of an expert accountant, prove negligence in the management of the collateral mortgages deposited by the mortgage company. Granted that the absence of any record of a meeting is proof that it was not held, the question still remains whether the failure to hold that meeting proves the negligence charged, or rather whether the judgment should be reversed when such absence failed to convince the district court of any negligence. It must also be remembered that failure to hold the meeting must have caused injury in order to be material. The plaintiffs in their brief admit that the securities deposited before August, 1907, were valid, and that the deposit of worthless securities began in that month. It follows that an examination in June would not have detected any loss in this respect. Besides, a regular quarterly meeting was held in October, when books and securities were examined and cash counted and found to be correct; and at a meeting in November there was an examination and the securities were found to exceed the bonds. It is asserted in the same brief that worthless securities were deposited in August, September, October and November, and tables attached to the petition in the Brandt suit are referred to as evidence of the fact. Upon a challenge of the abstract, however, it is admitted that these tables are not in the transcript. If they had been it would seem from their contents that some explanatory evidence is necessary to give them probative force. On the whole we can not find that the evidence relied upon to prove negligence of the directors is sufficient to warrant this court in ignoring or setting aside the negative findings of the district court.

Complaint is made of the failure of the district court to specially find incidental facts relating to the directors' meetings. Findings, however, were made covering the controlling issues as completely as the district

court deemed necessary, and if findings upon the matters now suggested were deemed essential by the plaintiffs, the attention of the district court should have been called to the particular facts omitted.

The judgment is affirmed.