No. 20,673.

ELLA WALLACE, as Administratrix, etc., *Appellant*, v. JOHN WALLACE, *Appellee*, et al.

### SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Effect of Payment Indorsed Thereon—Evidence—Instruction.* An instruction that an indorsement of a payment, placed on a note by the payee thereof, or with his knowledge or consent, is evidence of such payment, is not an instruction that the indorsement is conclusive evidence of payment, and is not so misleading as to warrant the reversal of a judgment based on a general finding that the payment was made as shown by the indorsement.

2. SAME—*Payments—Burden of Proof.* The trial court correctly instructed the jury as to the burden of proof concerning the indorsement of payments made on the note in controversy in this action.

3. EVIDENCE—*Incompetent Witness—Instruction.* The error committed in admitting the testimony of an incompetent witness was cured by striking out the testimony and instructing the jury not to consider it.

4. SAME—*Witness—Transaction with Person Since Deceased.* A witness, incompetent under section 320 of the code of civil procedure, may testify to all matters in controversy which did not concern any transaction or communication had personally by the witness with the deceased person.

5. SAME—*Witness—Transaction with Person Since Deceased.* A witness, incompetent under section 320 of the code of civil procedure, may testify to the details of a conversation had by him with another witness who, in behalf of the personal representative of the deceased person, has testified to the conversation, although in that conversation the incompetent witness detailed a transaction had by him personally with the deceased person.

6. SAME—*Witness—Transaction with Person Since Deceased.* The wife of a person incompetent to testify as a witness under section 320 of the code of civil procedure may testify to a conversation between her husband and the deceased person, but in which she took no part.

7. TRIAL—*Evidence Sustains Verdict.* The evidence, as shown by the abstracts, has been examined, and though conflicting, was sufficient to sustain the verdict of the jury.

Appeal from Harvey district court; FRANK F. PRIGG, judge. Opinion filed June 9, 1917. Affirmed.

*Ezra Branine,* and *Harry W. Hart,* both of Newton, for the appellant.

*W. H. Carpenter,* of Marion, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: In this action the plaintiff seeks to recover on a promissory note, and to foreclose a mortgage given to secure its payment. The defense was payment. The issues were submitted to a jury, and a verdict was returned in favor of defendant John Wallace. Judgment was rendered in his favor. The plaintiff appeals.

Defendant John Wallace had given his father, Charles Wallace, three separate promissory notes, one for $1200, one for $1700, and one for $2100, each secured by a mortgage on real property. The two smaller notes were paid prior to the death of Charles Wallace. While Charles Wallace was in California, defendant John Wallace paid $200 on the $2100 note, and indorsed thereon: "Paid on principal, Two Hundred Dollars, Feb. 22, 1913." Previous to this, six interest payments had been made on the $2100 note, the indorsements of which were all in John Wallace's handwriting. After Charles Wallace returned from California, and about May 16, 1913, he and defendant John Wallace went into the bank in which they both did business, and there engaged in conversation and made calculations and memoranda. After this conversation, the indorsement of "two hundred dollars" appeared as an indorsement of "two thousand dollars," the word "hundred" having been erased and the word "thousand" written in place thereof. The evidence tended to show that the word "hundred" was not erased by defendant John Wallace. The evidence did show that the word "thousand" was written by him.

Charles Wallace died December 2, 1914. After the conversation in the bank, the note was constantly in his custody or control until his death. On the trial, the controverted questions revolved around the indorsement of $2000. The plaintiff, who was the administratrix of the estate of Charles Wallace, insisted that no payment had been made on the note, and that the indorsements had been wrongfully and unlawfully placed thereon without her knowledge or consent or that of Charles Wallace. Before the commencement of this action, John Wallace tendered to the plaintiff $100 as final payment on the note. There was no interest then due, the interest having

been paid as shown by indorsements made subsequent to the $2000 indorsement. Charles Wallace did very little writing, and when convenient had some one write for him.

1. The court gave the following instruction:

"The jury are further instructed that if you believe from the evidence that the indorsements on said note were placed there by the deceased, Charles Wallace, or with the knowledge or consent of the deceased, Charles Wallace, then such indorsements would be evidence of such payments, and defendant would be entitled to credit for the amounts so indorsed."

Plaintiff argues that this instruction was erroneous, for the reason that it made the indorsements conclusive evidence of payment rather than *prima facie* evidence thereof. The instruction did not say that the indorsements were *prima facie* evidence of payment, nor that they were conclusive evidence thereof. The indorsements were evidence of payments, although they were not conclusive and could have been disputed. The court probably should have instructed the jury that the indorsements were *prima facie* evidence of payments; but the difference between the instruction as it should have been given and as it was given was so slight that it can not be said that the plaintiff was prejudiced by the instruction given. Other complaints involving the same question are made concerning other instructions given or requested. It is not necessary to discuss these propositions further.

2. Complaint is made of the following instructions:

"The jury are instructed that the burden is on the plaintiff to prove, by a preponderance of all the evidence, that the defendant erased an indorsement on said note of a smaller amount and wrote in place thereof a larger amount.

"The jury are further instructed that if you believe from the preponderance of the evidence that the defendant, John Wallace, erased an indorsement on said note of a smaller amount and then wrote in place thereof a larger amount, the burden of proof would then be on the defendant to prove, by a preponderance of all the evidence, that said larger amount was the true amount for which defendant was entitled to credit, or that such erasure and change were made by the direction or with the consent of said Charles Wallace."

These instructions correctly stated the rules concerning the burden of proof.

3. The plaintiff complains that defendant John Wallace was permitted to testify that he and his father had made a settle-

ment of the note in question. The evidence complained of is as follows:

"Q. Did you at any time have any settlement with your father? A. Yes, sir."

This evidence was admitted over objection, but was afterward stricken out by the court, and the jury was instructed not to consider it. The argument is made that the instruction did not cure the error committed in admitting the evidence. The evidence was not of a character that must necesarily have produced such an impression on the minds of the jurors that they could not obey the instruction of the court. This evidence comes within the rule declared in *Townsdin v. Nutt,* 19 Kan. 282; *The State v. Fooks,* 29 Kan. 425; *The State v. Furbeck,* 29 Kan. 532; *Whittaker v. Voorhees, Sheriff,* 38 Kan. 71, 15 Pac. 874; *Woods v. Hamilton,* 39 Kan. 69, 17 Pac. 335; *City of Kinsley v. Morse,* 40 Kan. 577, 20 Pac. 217; *The State v. Blakesley,* 43 Kan. 250, 252, 23 Pac. 570; *Lyons v. Berlau,* 67 Kan. 426, 73 Pac. 52; *Insurance Co. v. Haskin,* 69 Kan. 863, 77 Pac. 106; and *Gulliford v. McQuillen,* 75 Kan. 454, 89 Pac. 927.

4. The plaintiff complains that defendant John Wallace was permitted to testify, in substance:

"That on February 22, while his father was in California, he paid $200.00 to Mr. Hawk, the banker, and that he, the appellee, at that time, indorsed on the back of the note: 'paid on principal, two hundred dollars;' that afterwards, and about the 16th or 18th day of May, following, he and his father were in the bank; that he saw the note at that time in the bank; that he did not erase the word 'hundred' from said endorsement, but that of his own knowledge he did know who erased it; that he wrote the word 'thousand' in said indorsement where the word 'hundred' had been erased, which made the indorsement then read: 'paid on principal, two thousand dollars;' that the first time he saw the indorsement so reading was on said date in the bank; that the only time he saw the note in the absence of his father, was on the 22d of February; and that every time he saw the note after the meeting in the bank this indorsement remained on said note."

The plaintiff argues that this was testimony of personal transactions had by defendant John Wallace with his father. The testimony objected to probably goes to the limit of that which a competent witness may give; but a close examination of that testimony shows that John Wallace did not testify to any transaction or communication that he had with his father.

5. Complaint is made that defendant John Wallace was permitted to testify to a conversation had with his sister, in which conversation he detailed the transaction had with his father at the time the $200 was indorsed on the note. The sister, as a witness for the plaintiff, testified to the conversation between herself and John Wallace. He afterward testified concerning that conversation, giving the details thereof and contradicting his sister in a number of particulars. The plaintiff insists that the conversation testified to by the sister was a different one from that testified to by defendant John Wallace. An examination of the evidence discloses that both testified to one conversation. There was no error in permitting defendant John Wallace to detail that conversation after his sister had given her version of it. (*Harris v. Morrison,* 100 Kan. 157, 163 Pac. 1062, and cases there cited.)

6. Edith Wallace, the wife of defendant John Wallace, testified that she overheard a conversation in her home, between her husband and his father, in which she took no part. Her testimony was, in part, as follows:

"Q.. What did your father-in-law say to your husband? A. He said, 'John, there is no use in your working so hard,' he said, 'you got the places clear, all but $100.00.'"

This evidence was objected to on the ground that the witness was incompetent to testify in respect to any transaction or communication had with Charles Wallace. Edith Wallace was a defendant in the action. The plaintiff asked for judgment against both John Wallace and Edith Wallace, although Edith Wallace had not signed either the note or the mortgage, and was not liable thereon. She did not testify concerning any transaction or conversation had by her with Charles Wallace. The conversation was wholly between her husband and Charles Wallace. The testimony given by her does not come within the prohibition of the statute. (Civ. Code, § 320, Gen. Stat. 1915, § 7222.) Under the rule announced in *Sarbach v. Sarbach,* 86 Kan. 894, 122 Pac. 1052, that this statute is to be strictly construed, Edith Wallace was competent to testify to the conversation between her husband and Charles Wallace.

7. The plaintiff's last contention is that the verdict was not sustained by the evidence, but was contrary thereto. The abstract of the evidence has been examined. That abstract

Bank v. Cloud County.

shows that the evidence was very conflicting. The abstract also shows that there was evidence sufficient to sustain the verdict of the jury. The trial court approved the verdict and rendered judgment thereon. Under these circumstances, the verdict and judgment will not be set aside by this court.

The judgment is affirmed.